**No. 13-4577**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

**v.**

**FATIH SONMEZ,**

*Defendant-Appellant.*

**On Appeal from the United States District Court for the
District of Maryland (12-CR-0669-RDB-01)**

**OPENING BRIEF OF DEFENDANT-APPELLANT**

**THE HMA LAW FIRM, PLLC**

**/s/**

**Hassan M. Ahmad, Esq., #16049
1039 Sterling Road, Suite 204
Herndon VA 20170
Tel: (703) 964-0245
Fax: (703) 997-8556
hma@hmalegal.com
Attorney for Appellant Fatih Sonmez**

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………ii

STATEMENT OF JURISDICTION…………………………………………1

STATEMENT OF THE ISSUES……………………………………………..2

STATEMENT OF THE CASE………………………………………………3

STATEMENT OF FACTS……………………………………………………5

      A. Background…………………………………………………………5

      B. Indictment for Marriage Fraud………………………………………6

           i. Appellant's Motion to Dismiss……………………………6

      C. The District Court's Opinion………………………………………7

      D. Jury Instructions……………………………………………………9

      E. The Trial…………………………………………………………...12

SUMMARY OF THE ARGUMENTS…………………………………………13

ARGUMENT………………………………………………………………...15

  I.  The District Court committed reversible error by denying Appellant's proposed jury instruction which, in order to find Appellant guilty of marriage fraud under 8 U.S.C. § 1325(c), required the jury to find Appellant did not intend to establish a life with his spouse………………..15

      A. Standard of Review…………………………………………………15

      B. The Circuit Split on What Constitutes Marriage Fraud………………17

      C. Governing Principles of Statutory Construction………………………20

      D. Definition of "Marriage Fraud."……………………………………...22

i

E. The Meaning, Context, and Underlying Purpose of Marriage Fraud or a "Sham Marriage."…………………………………………………...23

II. The District Court committed reversible error by denying Appellant's proposed jury instruction which, in order to find Appellant guilty of marriage fraud under 8 U.S.C. § 1325(c), required the jury to find Appellant's sole purpose for entering into his marriage was to evade immigration laws……………………………………………………...31

A. Standard of Review…………………………………………………..31

B. The Three Elements under 8 U.S.C. § 1325(c)…………………………32

C. Governing Principles of Statutory Construction………………………..33

D. Interpreting the Meaning of "the purpose" Under 8 U.S.C. § 1325(c)…35

i. The Meaning of "The" and "Purpose."…………………………...35

ii. Additional Definitions and Supporting Context…………………36

iii. Cases Supporting the Proper Interpretation of "the purpose."…...37

CONCLUSION…………………………………………………………...46

STATEMENT WITH RESPECT TO ORAL ARGUMENT……………………..47

CERTIFICATE OF COMPLIANCE…………………………………………...48

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Bark v. INS, 511 F.2d 1200 (9th Cir.1975)…………………………………………….26

Brown & Williamson Tobacco Corp. v. FDA, 153 F.3d 155
(4th Cir.1998)…………………………………………………………………………..21

Cho v. Gonzales, 404 F.3d 96 (1st Cir. 2005)………………………..18, 22, 28, 37

Clark v. Martinez, 543 U.S. 371, 125 S. Ct. 716 (2005)……………………...29, 44

Dolan v. U.S. Postal Serv., 546 U.S. 481, 126 S. Ct. 1252 (2006)………………20

Elm Grove Coal Co. v. Dir., O.W.C.P, 480 F.3d 278 (4th Cir. 2007)………..20, 21

Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 112 S.Ct. 2589 (1992)
…………………………………………………………...........……………………...34

Johnson v. Zimmer, 686 F.3d 224 (4th Cir. 2012)……………………21, 22, 28, 34

Karayannis v. Brownell, 251 F.2d 882 (D.C. Cir. 1957)……………………...19, 24

Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325
179 L. Ed.2d 379 (2011)…………………………………………………..20, 29, 44

Leocal v. Ashcroft, 543 U.S. 1, 125 S. Ct. 377 (2004)………………………..29, 44

Lutwak v. United States, 344 U.S. 604, 73 S. Ct. 481 (1953)………...25, 26, 40, 41

Malik v. Attorney Gen. of U.S., 659 F.3d 253 (3d Cir. 2011)……………18, 27, 28

Monter v. Gonzales, 430 F.3d 546 (2d Cir. 2005)………………………………..18

Nat'l Coal. for Students with Disabilities Educ. & Legal Def.
Fund v. Allen, 152 F.3d 283 (4th Cir.1998)…………………………………..21, 34

Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245
(4th Cir. 2004)………………………………………………….21, 22, 28, 34, 35

Robinson v. Shell Oil Co., 519 U.S. 337, 117 S. Ct. 843 (1997)…………20, 33, 34

Rodriguez v. I.N.S., 204 F.3d 25(1st Cir. 2000)……………………………………28

Ross v. St. Augustine's College, 103 F.3d 338 (4th Cir.1996)……………………16

U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439,
113 S.Ct. 2173 (1993)……………………………………………………………..21

United States v. Abbas, 74 F.3d 506 (4th Cir.1996)……………………………...16

United States v. Aksu, Case No. 12-00668-RDB, 2013 WL 1898148
(D. Md. May 3, 2013)…………………………………………………………..6, 7, 17

United States v. Borodyonok, 286 Fed. App'x 97 (4th Cir.2008)…………………8

United States v. Chowdhury, 169 F.3d 402 (6th Cir. 1999)…………..19, 38, 32, 39

United States v. Darif, 446 F.3d 701 (7th Cir. 2006)…………………17, 18, 32, 42

United States v. Dyugaev, 443 Fed. App'x 810 (4th Cir.2011)……………………8

United States v. Ellis, 121 F.3d 908 (4th Cir. 1997)……………………………...16

United States v. Frost, 125 F.3d 346 (6th Cir.1997)……………………………...39

United States v. Fugit, 703 F.3d 248 (4th Cir. 2012)……………………20, 21, 34

United States v. Hickman, 626 F.3d 756 (4th Cir. 2010)……………..15, 16, 31, 32

United States v. Islam, 418 F.3d 1125
(10th Cir. 2005)……………………………………………...18, 22, 27, 32, 36, 37, 41

United States v. Khalaf, 390 Fed. App'x 216 (4th Cir.2010)……………………8

United States v. Lehman, 225 F.3d 426 (4th Cir.2000)………………………21, 34

United States v. Lighty, 616 F.3d 321 (4th Cir.2010)……………….…15, 16, 32

United States v. Miah, 182 F.3d 919 (6th Cir. 1999)…………………………39, 40

United States v. Munn, 595 F.3d 183 (4th Cir. 2010)………………………...29, 44

United States v. Orellana-Blanco, 294 F.3d 1143 (9th Cir. 2002)…………7, 22, 37

United States v. Ortiz-Mendez, 634 F.3d 837
(5th Cir. 2011)…………………………………………………...17, 18, 19, 27, 32, 42

United States v. Popravka, 325 F. App'x 235 (4th Cir. 2009)……………………19

United States v. Rafiq, 116 F. App'x 456 (4th Cir. 2004)…………………………...19

United States v. Rahman, 83 F.3d 89 (4th Cir.1996)……………………………..16

United States v. Rojas, 718 F.3d 1317 (11th Cir. 2013)…………………...19, 32, 33

United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020 (2008)………………29, 44

United States v. Shabani, 513 U.S. 10, 115 S.Ct. 382 (1994)……………...29, 44

United States v. Tagalicud, 84 F.3d 1180 (9th Cir. 1996)……………………18, 26

United States v. Vickerage, 921 F.2d 143 (8th Cir. 1990)………………..22, 24, 37

United States v. Yang, 603 F.3d 1024 (8th Cir. 2010)………………………19, 32

United States v. Yum, 776 F.2d 490 (4th Cir. 1985)……………………...19, 26, 41

**STATUTES**                                                                 **PAGE(S)**

8 U.S.C. §1154…………………………………………………………………..6, 23

8 U.S.C. § 1182(a)(6)(C)(i)……………………………………………………….24

8 U.S.C. § 1186a………………………………………………………………….28

8 U.S.C. § 1227(a)(1)(G)……………………………………………………23, 24, 27

8 U.S.C. § 1255(e)……………………………………………………..……………25

8 U.S.C. §
1325(c)……1,3, 6, 7, 8, 11, 15, 17, 22, 23, 26, 27, 31, 32, 33, 35, 36, 38, 39, 42, 43

28 U.S.C. § 1291………………………………………………...1

Maryland's Family Law Code § 7-103……………………………………….4

**COURT RULES**

**PAGE(S)**

Fed. R. App. P.4………………………………………………………1

Fed. R. App. P. 32…………………………………………………...48

**OTHER AUTHORITIES**

**PAGE(S)**

BLACK'S LAW DICTIONARY (9th ed. 2009)……………....………………..22, 23, 37

Dictrionary.com………………………………………………………...36

GARNER'S MODERN AMERICAN USAGE 809
(Bryan A. Garner et al. eds., 2009)……………………………………..36

James A. Jones, *The Immigration Fraud Amendments:*
*Sham Marriages or Shame Legislation?*, 24 FLA ST. U. L. REV. 679
(1997)………………………………………………………………24, 25

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY  (11th ed. 2011)…...........………...35, 36

OXFORD-ENGLISH DICTIONARY ONLINE………....………………….......………..35

## STATEMENT OF JURISDICTION

Appellant was indicted in violation under 8 U.S.C. § 1325(c) for marriage fraud. The United States District Court for the District of Maryland convicted him for having found guilty of marriage fraud under 8 U.S.C. § 1325(c). This Appeal is against the order of conviction entered on August 1, 2013. Appellant timely filed notice of Appeal pursuant to Fed. R. App. P.4(b) on August 2, 2013.

The Order of conviction was a final order of the District Court, therefore, this Court has jurisdiction over Appellant's Appeal pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1. Whether the District Court committed reversible error by denying Appellant's proposed jury instruction which, in order to find Appellant guilty of marriage fraud under 8 U.S.C. § 1325(c), required the jury to find Appellant did not intend to establish a life with his spouse.

2. Whether the District Court committed reversible error by denying Appellant's proposed jury instruction which, in order to find Appellant guilty of marriage fraud under 8 U.S.C. § 1325(c), required the jury to find Appellant's sole purpose for entering into his marriage was to evade immigration laws.

## STATEMENT OF THE CASE

This appeal concerns the proper interpretation of what constitutes marriage fraud under 8 U.S.C. §1325(c). Appellant Fatih Sonmez was indicted by the United States with knowingly and unlawfully entering into a marriage for the purpose of evading a provision of the immigration laws of the United States in violation of 8 U.S.C. §1325(c). [JA 3]

Appellant is a Turkish national who was validly admitted to the United States on a B-1/B-2 (tourist) visa on November 23, 2000. Appellant was authorized to remain in the United States until May 22, 2001. However, Appellant overstayed his visa and remained in the United States indefinitely. [JA 13] Appellant alleged he met his wife Tina Eckloff at a bar in Maryland, began a friendship, began dating, and eventually moved in together.  The two were married on November 15, 2008. [Id.]

Appellee United States alleged Appellant met Eckloff in order that Eckloff petition him for permanent residence.  However, Eckloff conceded in her plea agreement that she did in fact "have feelings" for Appellant and did in fact live with him, though she alleged those feelings began after she married Appellant. [JA 19]

Shortly thereafter, the couple filed for immigration benefits before the United States Citizenship and Immigration Services ("USCIS") office of

Baltimore, Maryland.  On June 4, 2010, the USCIS office issued a Notice of Intent to Deny. USCIS suspected that Appellant's marriage was entered into for the purpose of evading the immigration law.  [JA 13]

On December 20, 2012, Appellant was charged with one count of marriage fraud under 8 U.S.C. § 1325(c). [JA 3] Appellant filed a Motion to Dismiss the indictment because it incorrectly stated the governing law of what was considered "marriage fraud," [JA 20 – 51] stemming in part from a circuit split on the government's burden of proof under §1325(c).  At oral argument on April 29, 2013 Appellant argued in the alternative that the Court adopt a test requiring the government to prove Defendant had no intent to establish a life together with his spouse.  [JA 68 - 130] The District Court denied the motion. [JA 12 - 18] Furthermore, Appellant's attempt to proffer jury instructions allowing the jury to consider whether he intended to establish a life with his wife and that the jury must find that his sole purpose of entering into his marriage was to evade immigration laws were likewise denied. [JA 52 - 60]

On May 16, 2013, a jury found Appellant guilty of marriage fraud. [JA 61 - 66] Appellant was sentenced on July 31, 2013 and judgment entered the following day. Appellant now appeals his conviction. [JA 67]

## STATEMENT OF FACTS

### A. Background.

Appellant, Fatih Sonmez, is a Turkish national. [JA 13] On November 23, 2000, Appellant was lawfully admitted to the United States on a B-1/B-2 (tourist) visa and was authorized to remain in the United States until May 22, 2001. (Id.) However, Appellant overstayed his visa and remained in the United States. (Id.)

In and around September 2007, Appellant alleged he met Tina Eckloff ("Eckloff") at a bar in Maryland. (Id.).  The two began a friendship, began dating, and in the summer of 2008, began living together.(Id.). On November 15, 2008, the two were married (Id.). Shortly thereafter, Appellant and Eckloff filed for immigration benefits before the United States Citizenship and Immigration Services ("USCIS") office of Baltimore, Maryland. (Id.).  On June 4, 2010, the USCIS office issued a Notice of Intent to Deny. (Id.)  USCIS suspected that Appellant's marriage was entered into for the purpose of evading the immigration law. (Id.)  Appellant responded to the Notice of Intent to deny.(Id.)  At each stage, both Appellant and Eckloff maintained that they entered into the marriage with bona fide intent. (Id.).

However, in the ensuing months, Appellant and Eckloff's relationship began to dissolve. (Id.) Appellant eventually filed for divorce from Eckloff and the divorce was granted on fault-based grounds of cruelty and/or excessively vicious

conduct pursuant to Maryland's Family Law Code §§7-103(a)(6) and (a)(7). (Id.). Additionally, Appellant filed a petition under the Violence Against Women Act ("VAWA"), 8 U.S.C. §1154(a)(1)(A)(iii), (B)(ii), and also applied for adjustment of status (i.e., for a green card) which allows abused spouses (and ex-spouses within 2 years of divorce) of US citizens to self-petition for lawful permanent residence. (Id.). Appellant's application and petition were denied by USCIS on January 22, 2014.

## B. Indictment for Marriage Fraud.

On December 2, 2012, Appellant was charged with one count of marriage fraud under 8 U.S.C. § 1325(c)—Case No. 12-00669-RDB, along with other co-defendants. [JA 3]  On March 3, 2013, Appellant filed a Motion to Dismiss the Indictment. [JA 20 - 51]

### i.  Appellant's Motion To Dismiss.

In Appellant's Motion to Dismiss the Indictment, Appellant raised the question, "[d]oes entering a marriage with an intent to "evade the immigration law" automatically make the marriage fraudulent?" [JA 26].  Some courts have said yes, others have said no. (Id.) In support of Appellant's contention that entering a marriage with intent to 'evade the immigration law' does not automatically make the marriage fraudulent, thus the indictment inadequately charged the law, Appellant pointed out that there is split amongst the circuit courts

on whether an individual's intent to establish a life is a predominant or paramount factor a jury must consider in order to convict an individual of marriage fraud under 8 U.S.C. § 1325(c). (Id.).

After a motion hearing with oral argument, the Honorable Judge Richard D. Bennett of the US District Court, D-Maryland, denied Appellant's Motion to Dismiss the Indictment. [JA 12 - 18]

### C. The District Court's Opinion

The District Court in its Opinion specifically "concluded that there is a circuit split concerning the interpretation" of 8 U.S.C. §1325(c). [JA 16] The Court noted that "[o]n the one hand, the United States Courts of Appeal for the First, Second, Eighth and Ninth Circuits have adopted what this Court referred to as the "establish a life test." (Id.) (citations omitted). According to those circuit courts, "'[a] marriage is a sham if the bride and groom did not intend to establish a life together at the time they were married.'" (Id.) (quoting United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002)).

"On the other hand, the United States Courts of Appeal for the Fifth, Sixth, Seventh and Tenth Circuits have established a broader standard by concluding that *any* intent to evade immigration law is punishable under Section 1325(c)." (Id.) (citations omitted). Moreover, the District Court noted that "[a]lthough [the] United States Court of Appeals for the Fourth Circuit has not published any

opinion concerning the interpretation of § 1325(c)," it has adopted the reasoning of the latter circuits "in several unpublished opinions." (Id.). *See, e.g.,* United States v. Dyugaev, 443 Fed. App'x 810 (4th Cir.2011); United States v. Khalaf, 390 Fed. App'x 216 (4th Cir.2010); United States v. Borodyonok, 286 Fed. App'x 97 (4th Cir.2008).

Although the District Court noted that these unpublished opinions "do not create binding precedent," those cases "opined as to the interpretation of 8 U.S.C. § 1325(c) and," therefore, the District Court sided with those opinions. [JA 17] Thus, according to the District Court, the Fourth Circuit's standard for marriage fraud under 8 U.S.C. § 1325(c) is that "'requires the government to prove: (1) that the alien knowingly entered into a marriage; (2) the marriage was entered into for the purpose of evading a provision of the immigration laws; and (3) the alien knew or had reason to know the immigrations laws.'" (Id.) (quoting United States v. Khalaf, 390 Fed. App'x 216 (4th Cir.2010)). Therefore, the District Court held that the latter interpretation of Section 1325(c) "would be the subject of a jury instruction." (Id.).

And, as a result, the District Court denied Appellant's Motion to Dismiss the Indictment.

**D. Jury Instructions.**

As Appellants case progressed to trial, the issue regarding the jury instructions came to a head. On May 5, 2013, Appellant filed his proposed jury instructions, Nos. 34 to 41, along with adopting without objection Government proposed instructions 1 through 33. [JA 52 – 60].  Appellant's proposed jury instruction No. 35, read as follows:

> In order to find the defendant guilty of entering into a marriage for the purpose of evading a provision of the United States immigration law, the government must prove beyond a reasonable doubt each of the following elements:
>
>> First, that defendant knowingly entered into a marriage with a US citizen,
>>
>> Second, that *the only reason* the marriage was entered into was to obtain an immigration benefit,
>>
>> Third, that the defendant and his US citizen spouse *had no intent to establish a life together*.
>>
>> Fourth, that defendant knew the said purpose for the marriage and knew or had reason to know that his conduct was unlawful.

[JA 54] (emphasis added).

In explaining the second element, Appellant's proposed jury instruction No. 37 charged to the jury, in part, with the following:

> The second element which the government must prove beyond a reasonable doubt is that the only purpose the defendant entered into the marriage was to obtain an immigration benefit.
> If you find there was any reason the defendant entered into the marriage besides obtaining an immigration benefit, you must find the defendant not guilty.

You must determine all the reasons you believe the defendant wanted to get married at the time the marriage was entered into. You can consider other things like the wife's intent, or how the defendant and his spouse met each other. But even if you find that the defendant first met his spouse to obtain an immigration benefit, but later got married for any additional reason, you must find the defendant not guilty.

[JA 56]

Further, Appellant's proposed jury instruction No. 38, explaining the

third element, held, in part, as follows:

The third element that the government must prove beyond a reasonable doubt is that the defendant and his US citizen spouse had no intent to establish a life together.

The question of whether the defendant and the US citizen spouse "established a life together" is a question of fact. You must consider all relevant evidence.

* * *

If you find that defendant his US citizen spouse did intend to establish a life together, you must find the defendant not guilty.

If you are not sure whether the defendant and his US citizen spouse established a life together, but you find that the government has not proven beyond a reasonable doubt that defendant and his US citizen spouse did *not* intend to establish a life together, you must find the defendant not guilty.

[JA 61] (emphasis in original).

`       The Court ultimately denied Appellant's proposed instruction in its entirety.

[JA 131 - 142]. Ultimately, after Appellant's trial concluded, the Court gave the

following instruction regarding the controlling law: "The language of 8 United

States Code, Section 1325(c) makes plain that it is intended to punish any

10

individual who knowingly enters into a marriage for the purpose of evading any

provision of the immigration laws."[JA 143]. Furthermore, the jury was instructed

as follows:

> In order to find the defendant guilty of entering into a marriage for the
> purpose of evading United States immigration law, the government
> must prove beyond a reasonable doubt each of the following elements:
>
> First, that [] the defendant knowingly entered into a marriage with a
> United States citizen.
>
> Second, that the marriage was entered into for the purpose of evading
> a provision of the United States immigration laws.
>
> And third, that the defendant knew of said purpose of the marriage.
> And had reason to know that his conduct was unlawful.

[JA 142 - 144]

Regarding the second element, the District Court did not offer any

additional explanation of what "the purpose" meant. [JA 144] Also, the

District Court's explanation of the third element, on intent, similarly said

nothing about Appellant's intent to establish a life with his spouse. [JA 144 -

145]

**E. The Trial.**

Appellant's trial commenced on May 13, 2013. [JA 8]. On May 16, 2013,

after a four day trial, the jury found Appellant guilty of marriage fraud. [JA 8].

Appellant moved for a new trial seeking to vacate the conviction based upon the

jury's verdict. [JA 8 - 9]. On July 31, 2013, the District Court denied Appellant's motion and sentenced Appellant accordingly. [JA 9]

This Appeal follows. [JA 67]

## SUMMARY OF THE ARGUMENTS

**ARGUMENT I—Jury Instruction on Intent to Establish a Life.**

The District Court, in denying Appellant's proposed jury instruction, charging the jury that it must find that Appellant did not intend to establish a life with his spouse in order to be found guilty of marriage fraud, did not properly instruct the jury on the controlling law to sustain a conviction under 8 U.S.C. § 1325(c). Although this Court has not addressed the issue of what role the intent to establish a life plays regarding a conviction for marriage fraud, the overwhelming majority of circuit courts hold that the intent to establish a life is either the predominant factor or an important factor in deciding if an individual committed marriage fraud.

The District Court, in failing to instruct the jury on this factor, mischaracterized the law in the final jury instructions which resulted in Appellants conviction. Therefore, the District Court committed reversible error by failing to instruct the jury on the controlling law in order to sustain a conviction under 8 U.S.C. § 1325(c).

**ARGUMENT II—Jury Instruction on the Sole Purpose of Evading Immigration Laws.**

The District Court, in denying Appellant's proposed jury instruction, charging the jury that it must find that Appellant entered into a marriage for the sole purpose of evading immigration laws in order to be found guilty of marriage

fraud, did not properly instruct the jury on the controlling law to sustain a conviction under 8 U.S.C. § 1325(c). Although no circuit court has addressed the meaning of "the purpose" as found in 8 U.S.C. § 1325(c), the common meaning of the phrase, corroborated by other authority, strongly suggests that "the purpose" requires a jury to find an individual's sole purpose for entering into a marriage was to evade immigration laws to be convicted of marriage fraud under 8 U.S.C. § 1325(c).

The District Court, in failing to instruct the jury on the proper meaning of the phrase "the purpose," and what the jury was required to find in order to convict Appellant, mischaracterized the law in the final jury instructions which resulted in Appellants conviction. Therefore, the District Court committed reversible error by failing to instruct the jury on the controlling law in order to sustain a conviction under 8 U.S.C. § 1325(c).

**ARGUMENT**

**I. The District Court committed reversible error by denying Appellant's proposed jury instruction which, in order to find Appellant guilty of marriage fraud under 8 U.S.C. § 1325(c), required the jury to find Appellant did not intend to establish a life with his spouse.**

The District Court committed reversible error by denying Appellant's proposed jury instructions, Nos. 35 and 37, thereby failing to instruct the jury on the controlling law in order to sustain a conviction under 8 U.S.C. § 1325(c). Although this Court has not addressed what role the intent to establish a life plays regarding a conviction for marriage fraud, the overwhelming majority of circuit courts hold that the intent to establish a life is either the predominant factor or an important factor in deciding if an individual committed marriage fraud. The District Court, in failing to instruct the jury on this factor, mischaracterized the law in the final jury instructions which resulted in Appellants conviction. Therefore, Appellant's conviction must be reversed.

**A. Standard of Review.**

According to this Court, failure to give a proper jury instruction is reversible error. United States v. Hickman, 626 F.3d 756, 771 (4th Cir. 2010). Specifically, this Court "will reverse only when the requested instruction '(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." Id. (quoting

15

United States v. Lighty, 616 F.3d 321, 366 (4th Cir.2010)). "This review is holistic: 'we do not view a single instruction in isolation; rather we consider whether[,] taken as a whole and in the context of the entire charge, the instructions accurately and fairly state[d] the controlling law.'" Id. (quoting Lighty, 616 F.3d at 366).

This Court reviews "de novo whether a district court has properly instructed a jury on the statutory elements of an offense." United States v. Ellis, 121 F.3d 908, 923 (4th Cir. 1997) (citing United States v. Rahman, 83 F.3d 89, 92 (4th Cir. 1996)). "However, 'the decision of whether to give a jury instruction and the content of an instruction are reviewed for an abuse of discretion.'" Id. (quoting United States v. Abbas, 74 F.3d 506, 513 (4th Cir.1996)). Even though the failure to give a proper jury instruction is reversible error, "reversal is warranted only when the error is prejudicial based on a review of the record as a whole." Id. (citing Ross v. St. Augustine's College, 103 F.3d 338, 344 (4th Cir.1996)).

In the present case, whether the District Court committed reversible error turns on whether Appellant's proposed jury instruction—the intent to establish a life together—accurately and fairly stated the controlling law. Therefore, an examination of the controlling law—what constitutes marriage fraud—is necessary.

### B. The Circuit Split on What Constitutes Marriage Fraud.

Under 8 U.S.C. § 1325, subsection (c), Congress has criminalized the act of immigration-related marriage fraud. *See* 8 U.S.C. § 1325(c). That subsection, entitled "Marriage fraud," states that "[a]ny individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both." Id.

As the District Court and other circuit courts have observed, there is a split amongst circuit courts on the interpretation of section 1325(c) and what needs to be proven in order to warrant a conviction for marriage fraud. [JA 14]; *see also* United States v. Ortiz-Mendez, 634 F.3d 837, 840 (5th Cir. 2011). Specifically, the circuit courts are split on whether establishing a life is a consideration—controlling or as a factor to be weighed—in determining if an individual has committed marriage fraud. *See,* id.

On the one hand, some circuits—who have been presented with whether the intent to establish a life is an element of the offense that must be charged to the jury—have expressly rejected its application. *See* United States v. Darif, 446 F.3d 701, 710 (7th Cir. 2006) ("Under this Circuit's precedent, the government is not required to show that Defendant lacked intent to establish a life with Kirklin; it need only show that Defendant entered into the marriage with Kirklin for the

purpose of evading immigration laws."); United States v. Ortiz-Mendez, 634 F.3d 837, 840 (5th Cir. 2011) ("No aspect of the statute requires the government to show that Ortiz–Mendez lacked an intent to establish a life with Rosales; rather, the government need only show that she entered into the marriage with the purpose of evading immigration laws.").

Conversely, other circuit courts have explicitly held that the intent to establish a life is the principal consideration for whether or not marriage fraud has been committed. *See* Cho v. Gonzales, 404 F.3d 96, 102 (1st Cir. 2005); Monter v. Gonzales, 430 F.3d 546, 558 (2d Cir. 2005); Malik v. Attorney Gen. of U.S., 659 F.3d 253, 258 (3d Cir. 2011); United States v. Tagalicud, 84 F.3d 1180, 1185 (9th Cir. 1996).

Further, other circuits have held that the statutory language of section 1325(c) is the applicable test, but whether the couple intended to established a life together is a valid consideration for purposes of jury instructions. *See* United States v. Islam, 418 F.3d 1125, 1128 n. 3 (10th Cir. 2005) ("[W]hether the couple 'intended to establish a life together . . . although not exclusive, . . . [i]f proffered and admitted, the jury certainly may consider such evidence when determining whether a marriage was entered into for the purpose of evading the immigration laws.") (emphasis omitted); United States v. Ortiz-Mendez, 634 F.3d 837, 840 (5th Cir. 2011) ("We do not suggest that one's intent to establish a life with his spouse

is irrelevant. It is one factor, among many, that can be considered in determining whether a marriage was entered into for the purpose of evading the immigration laws.").

Also, other circuits, who have discussed immigration-related marriage fraud, have not explicitly ruled on what role, if any, establishing a life plays in terms of marriage fraud under § 1325(c). *See* United States v. Chowdhury, 169 F.3d 402 (6th Cir. 1999); United States v. Yang, 603 F.3d 1024 (8th Cir. 2010); United States v. Rojas, 718 F.3d 1317 (11th Cir. 2013); Karayannis v. Brownell, 251 F.2d 882 (D.C. Cir. 1957).

As for this Court, recent unpublished decisions, while not directly or indirectly addressing the role of establishing a life, have only applied the statutory language of section 1325(c). *See, e.g.*, United States v. Rafiq, 116 F. App'x 456, 457 (4th Cir. 2004); United States v. Popravka, 325 F. App'x 235, 236 (4th Cir. 2009). However, this Court has held that in determining if there has been marriage fraud, a proper jury instruction holding "that if the jury finds no mutuality between the parties to a marriage to 'establish a life together,' there is no marriage[,]" was proper. United States v. Yum, 776 F.2d 490, 494 (4th Cir. 1985).

Although there is a recognizable split between the above circuits on what role the intent to establish a life plays, all the above circuits have one thing in

common: none of them have gone through a statutory analysis to determine the proper meaning of "marriage fraud."

Therefore, because this is a matter of first impression for this Court, and because no other circuit court has thoroughly interpreted what "marriage fraud" means, we must turn to statutory construction.

## C. Governing Principles of Statutory Construction.

When faced with statutory construction, a court "begin[s] with the text of the statute." Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1331, 179 L. Ed. 2d 379 (2011). *See also* United States v. Fugit, 703 F.3d 248, 254 (4th Cir. 2012) (same). In doing so, courts must "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S. Ct. 843, 846 (1997). *See also* Fugit, 703 F.3d at 254 (quoting Robinson, 519 U.S. at 340). However, reading and defining terms and phrases contained in a statute cannot be done in isolation: "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S. Ct. 1252, 1257 (2006).

Moreover, this Court agrees that "[i]n undertaking the task of statutory construction, we 'must not be guided by a single sentence or member of a

sentence,' but instead must 'look to the provisions of the whole law, and to its object and policy.'" <u>Elm Grove Coal Co. v. Dir., O.W.C.P.</u>, 480 F.3d 278, 293 (4th Cir. 2007) (quoting <u>U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.</u>, 508 U.S. 439, 455, 113 S.Ct. 2173 (1993)) (internal citations omitted). "'[T]he traditional rules of statutory construction to be used in ascertaining congressional intent include: the overall statutory scheme, legislative history, the history of evolving congressional regulation in the area, and a consideration of other relevant statutes.'" <u>Id.</u> at 293-94 (quoting <u>Brown & Williamson Tobacco Corp. v. FDA</u>, 153 F.3d 155, 162 (4th Cir.1998)).

Additionally, "words that are not defined in the relevant statutory provisions are typically 'interpreted as taking their ordinary, contemporary, common meaning.'" <u>Johnson v. Zimmer</u>, 686 F.3d 224, 232 (4th Cir. 2012) (quoting <u>United States v. Lehman</u>, 225 F.3d 426, 428 (4th Cir.2000)). Moreover, "[t]his court has long consulted dictionaries of common usage in order to establish the plain meaning of disputed statutory language." <u>United States v. Fugit</u>, 703 F.3d 248, 254 (4th Cir. 2012) (citing <u>Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen</u>, 152 F.3d 283, 289 (4th Cir.1998)).

Further, where a word or phrase " 'lends itself to more than one reasonable interpretation,' it is ambiguous." <u>Johnson</u>, 225 F.3d at 235 (citing <u>Newport News Shipbuilding & Dry Dock Co. v. Brown,</u> 376 F.3d 245, 248 (4th Cir. 2004)). In the

event the statutory language is susceptible to two logical interpretations, a court's "obligation is to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested." Id. (citing Newport News Shipbuilding & Dry Dock Co., 376 F.3d at 248).

### D. Definition of "Marriage Fraud."

As it was outlined above, 8 U.S.C. § 1325(c) is entitled "Marriage fraud." The term marriage fraud is not defined under section 1325, nor anywhere else in Title 8 of the United States Code. *See generally* Title 8, United States Code. Nonetheless, marriage fraud has also been characterized by many courts as a "sham marriage." *See, e.g.,* United States v. Islam, 418 F.3d 1125, 1126 (10th Cir. 2005) ("The court concluded a rational juror could have found that Defendant entered into a sham marriage to evade the immigration laws."); United States v. Vickerage, 921 F.2d 143, 144 (8th Cir. 1990) (defendant indicted for "enter[ing] into a sham marriage to circumvent and evade the immigration laws in violation of 8 U.S.C. § 1325[c][.]"); Cho v. Gonzales, 404 F.3d 96, 104 (1st Cir. 2005); United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002).

The definition of a sham marriage "is a purported marriage in which all the formal requirements are met or seemingly met, but in which the parties go through the ceremony with no intent of living together as husband and wife." BLACK'S LAW

DICTIONARY 1500 (9th ed. 2009). Black's Law Dictionary also points to the analogous phrases such as "green-card marriage" and "limited-purpose marriage." *See,* id. A green-card marriage is defined as:

> A sham marriage in which a U.S. citizen marries a foreign citizen for *the sole purpose* of allowing the foreign citizen to become a permanent U.S. resident. The Marriage Fraud Amendments were enacted to regulate marriages entered into for the purpose of circumventing U.S. immigration laws. 8 U.S.C. §§ 1154(h), 1255(e).

Id. at 1060 (emphasis added). A limited-purpose marriage is "a marriage in which the parties agreed to be married only for certain reasons." Id. at 1061.

Thus, according to Black's Law Dictionary, marriage fraud equates to a fraudulent marriage, a shame marriage, or a limited-purpose marriage. The unifying feature of the latter phrases is that a couple enters into the marriage with no intent of being husband and wife, the sole purpose or reason is to procure immigration benefits.

### E. The Meaning, Context, and Underlying Purpose of Marriage Fraud or a "Sham Marriage."

In addition to section 1325(c), marriage fraud is also prohibited under 8 U.S.C. § 1227(a)(1)(G). This section says, *inter alia*, that a marriage is fraudulent if entered into under certain circumstances, "unless the alien establishes to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws[.]" Id. at § 1227(a)(1) (G)(i). Or, if "it appears to the satisfaction of the Attorney General that the alien

23

has failed or refused to fulfill the alien's marital agreement, which in the opinion of the Attorney General was made," that is, the marital agreement, "for the purpose of procuring the alien's admission as an immigrant." <u>Id</u>. at § 1227(a)(1)(G)(ii).

Section 1227(a)(1)(G) points to section 1182(a)(6)(C)(i) for what constitutes "fraud" or "misrepresentation": "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . admission into the United States or other benefit provided under this chapter . . . ." <u>Id.</u> at § 1182(a)(6)(C)(i). As one of the earliest cases interpreting section 1227's predecessor (section 1251(c)) held: "[T] he statute means that the nonquota visa must have been secured, not innocently, not unknowingly, but through fraud because of a marriage entered into for the purpose of achieving the preferential status of a spouse of an American[.]" <u>Karayannis v. Brownell</u>, 251 F.2d 882, 884 (D.C. Cir. 1957)

Thus, what the language of §§ 1325(c) and 1227(a)(1)(G) tends to indicate is that the act being prohibited is entering into a marriage to obtain immigration benefits—meaning the marriage is not legitimate, it is fraudulent. In other words, the marriage is a sham. *See* <u>United States v. Vickerage</u>, 921 F.2d 143, 144 (8th Cir. 1990) (noting the defendant was charged with conspiring "to enter into a sham marriage to circumvent and evade the immigration laws in violation of 8 U.S.C. § 1325[c]."). *See also* James A. Jones, *The Immigration Fraud Amendments: Sham Marriages or Shame Legislation?*, 24 Fʟᴀ Sᴛ. U. L. Rᴇᴠ. 679, 681 (1997) (noting

that Congress created stricter standards for marriages that procure immigration benefits "to counter the perceived problem of immigrants entering into sham marriages to receive priority immigration status.").

The United States Supreme Court considered issues surrounding the validity of marriages for procuring immigration benefits in Lutwak v. United States, 344 U.S. 604, 73 S. Ct. 481 (1953). In Lutwak, the Court faced immigration-related fraud under the War Brides Act. Id. at 606, 73 S.Ct. at 484. According to the Court, "Congress did not intend to provide aliens with an easy means of circumventing the quota system by fake marriages in which neither of the parties ever intended to enter into the marital relationship[.]" Id. at 611, 73 S. Ct. at 486.

Moreover, the Court agreed that when a couple enters "into a marriage solely for the purpose of facilitating [one spouses] entry into this country, and with no intention by either party to enter into the marriage relationship as it is commonly understood, . . . they were never married at all." Id. at 613, 73 S. Ct. 487 (citing United States v. Rubenstein, 151 F.2d 915, 919-19 (2d Cir. 1945)). According to the Court, where "the relationship was entered into with no intention of the parties to live together as husband and wife[,]" the marriage was simply "a scheme to defraud[.]" Id. at 614, 73 S. Ct. at 488.

Not only is Lutwak helpful in providing historical guidance on what it considered a fraudulent marriage, but the Court also discussed the essence of a

valid marriage: "The common understanding of a marriage . . . is that the two parties have undertaken *to establish a life together* and assume certain duties and obligations." Id. at 611, 73 S. Ct. at 486 (emphasis added). Thus, according to the Supreme Court, establishing a life is paramount to determining whether a marriage is valid or fraudulent. *See*, id.

This Court, in United States v. Yum, 776 F.2d 490 (4th Cir. 1985), relying on Lutwak, also discussed differentiating between valid marriages ("good faith marriages") and so-called "sham marriages." Id. at 493. In that case, this Court found no error in a District Court's instruction to the jury regarding what is and is not a sham marriage: "Judge Perry[] charge[d] . . . that if the jury finds no mutuality between the parties to a marriage to 'establish a life together,' there is no marriage." Id. at 494 (internal citations omitted).

Furthermore, one of the premiere cases to interpret section 1325(c), interchanging "sham marriage" and "marriage fraud," noted that determining factor on whether a couple committed marriage fraud was "'if the bride and groom did not intend to establish a life together at the time they were married.'" United States v. Tagalicud, 84 F.3d 1180, 1185 (9th Cir. 1996) (quoting Bark v. INS, 511 F.2d 1200, 1201-02 (9th Cir.1975) (citing Lutwak for the proposition as to "whether [the couple] intended to establish a life together when they exchanged marriage vows."). Although the Tenth Circuit held that whether a couple intended

to establish a life together was not the exclusive inquiry for determining marriage fraud under section 1325(c), such an inquiry may be relevant to the alien's 'intent' in entering into a marriage." United States v. Islam, 418 F.3d 1125, 1128 n.3 (10th Cir. 2005).

Moreover, "[i]f proffered and admitted, the jury certainly may consider such evidence when determining whether a marriage was entered into for the purpose of evading the immigration laws." Id. (emphasis omitted). In a separate note, the Tenth Circuit reiterated that "evidence showing an 'intent to establish a life together' is not the dispositive inquiry under § 1325(c)[,]" but it is a factor. Id. at 1130 n. 5. Similarly, the Fifth Circuit, which explicitly rejected establishing a life as an element of marriage fraud, cautioned "that one's intent to establish a life with his spouse is [not] irrelevant. It is one factor, among many, that can be considered in determining whether a marriage was entered into for the purpose of evading the immigration laws." United States v. Ortiz-Mendez, 634 F.3d 837, 840 (5th Cir. 2011).

Additionally, the "establish a life" linchpin has also been accepted as the governing standard for other immigration-related marriage fraud statutes. *See, e.g.,* Malik v. Attorney Gen. of U.S., 659 F.3d 253, 258 (3d Cir. 2011) (noting that for purposes of 8 U.S.C. § 1227(a)(1)(G), "whether a marriage is fraudulent, we consider whether the parties intended to establish a life together at the time of

27

marriage."); <u>Rodriguez v. I.N.S.</u>, 204 F.3d 25, 27 (1st Cir. 2000) (same); <u>Cho v. Gonzales</u>, 404 F.3d 96, 102 (1st Cir. 2005) (affirming the same standard for purposes of 8 U.S.C. § 1186a).

Overall, of the twelve Circuit Courts of Appeal cited here and in Section I(B), *supra*, eight have found that establishing a life is either the predominant factor or a factor that a jury should consider for determining whether marriage fraud has been committed. Only one has expressly rejected the use of establishing a life as a factor, and four have yet to face the question directly. In summary, what the Supreme Court, this Court, and the majority of circuit courts agree on is that the predominant factor or, at a minimum, a paramount factor in determining whether a marriage is fraudulent or not is whether the couple intended to establish a life together.

However, if this Court believes that the split amongst the circuit courts, as well as the split in the persuasive authority of this Court, demonstrates a reasonable disagreement in what the meaning of marriage fraud is, such a finding demonstrates the ambiguity of the term "marriage fraud." *See* <u>Johnson v. Zimmer</u>, 686 F.3d 224, 235 (4th Cir. 2012) (noting that where a term "'lends itself to more than one reasonable interpretation,' it is ambiguous.") (quoting <u>Newport News Shipbuilding & Dry Dock Co. v. Brown</u>, 376 F.3d 245, 248 (4th Cir. 2004)). As a result, if this Court believes that both interpretations are legitimate, then this Court

should follow the Rule of Lenity.

The Rule of Lenity "applies primarily to the interpretation of criminal statutes." <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 131 S. Ct. 1325, 1336, 179 L. Ed. 2d 379 (2011). However, the Supreme Court has agreed that "if a statute has criminal applications, 'the rule of lenity applies' . . . even in immigration cases . . . ." <u>Clark v. Martinez</u>, 543 U.S. 371, 380, 125 S. Ct. 716, 724 (2005) (quoting <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 12, 125 S. Ct. 377, 384 (2004)).

The Rule presses upon courts "to favor a more lenient interpretation of a criminal statute 'when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" <u>Kasten</u>, 131 S. Ct. at 1336, 179 L. Ed.2d 379 (quoting <u>United States v. Shabani</u>, 513 U.S. 10, 17, 115 S.Ct. 382 (1994)). "Indeed, in the face of any such ambiguity, we would be *obliged* to apply the rule of lenity and resolve the conflict in the defendant's favor. <u>United States v. Munn</u>, 595 F.3d 183, 194 (4th Cir. 2010) (citing <u>United States v. Santos</u>, 553 U.S. 507, 128 S.Ct. 2020, 2025 (2008) (emphasis in original)).

Here, the District Court committed reversible error by failing to charge the jury appropriately. Appellant's proposed jury instructions Nos. 35, 37 and 38 held that the government had to prove that Appellant and his spouse had no intent to establish a life together. [JA 52, 54 - 55]. Not only was each instruction denied in its entirety, but the District Court's final jury instructions did not, at a minimum,

instruct the jury that they could consider, as a factor, whether Appellant and his spouse intended to establish a life together.

As the above authority shows, the majority of courts hold that the intent to establish a life is the predominant factor to consider regarding whether an alien entered into a fraudulent marriage. At a minimum, it is a factor that the jury should be instructed to consider regarding the validity of the marriage. Moreover, if it comes down to one interpretation being favored of another, the Rule of Lenity obliges a court to follow the interpretation more favorable to the defendant. Thus, Appellants proposed instruction was a correct statement of the controlling law. Moreover, the District Court's final jury instructions, as a whole, did not adequately cover this issue. Therefore, the instructions did not accurately or fairly state the controlling law.

Accordingly, because the District Court failed to properly instruct the jury on the controlling law, Appellant respectfully requests that his conviction be reversed.

**II. The District Court committed reversible error by denying Appellant's proposed jury instruction which, in order to find Appellant guilty of marriage fraud under 8 U.S.C. § 1325(c), required the jury to find Appellant's sole purpose for entering into his marriage was to evade immigration laws.**

The District Court committed reversible error by denying Appellant's proposed jury instructions, Nos. 35 and 37, thereby failing to instruct the jury on the controlling law in order to sustain a conviction under 8 U.S.C. § 1325(c). Although no circuit court has addressed the meaning of "the purpose" as found in 8 U.S.C. § 1325(c), the common meaning of the phrase, corroborated by other authority, strongly suggests that "the purpose" requires a jury to find an individual's sole purpose for entering into a marriage was to evade immigration laws to be convicted of marriage fraud under 8 U.S.C. § 1325(c). The District Court, in failing to instruct the jury on the proper meaning of the phrase "the purpose," and what the jury was required to find in order to convict Appellant, mischaracterized the law in the final jury instructions which resulted in Appellants conviction. Therefore, Appellant's conviction must be reversed.

**A. Standard of Review.**

The standard of review for jury instructions as outlined in Section I(A), *supra*, governs this argument as well. Overall, the key in the review of whether a proposed jury instruction was wrongfully withheld is as follows: "'[W]e do not view a single instruction in isolation; rather we consider whether [,] taken as a

whole and in the context of the entire charge, the instructions accurately and fairly state[d] the controlling law.'" United States v. Hickman, 626 F.3d 756, 771 (4th Cir. 2010) (quoting United States v. Lighty, 616 F.3d 321, 366 (4th Cir.2010)).

**B. The Three Elements under 8 U.S.C. § 1325(c).**

According to 8 U.S.C. § 1325(c), "[a]ny individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both." Id.

Many circuits have looked to the statutory language in order to derive the elements the government is required to prove in order to convict an individual of marriage fraud—those elements are: "(1) the alien knowingly entered into a marriage; (2) the marriage was entered into for the purpose of evading a provision of the immigration laws; and (3) the alien knew or had reason to know of the immigration laws." United States v. Islam, 418 F.3d 1125, 1128 (10th Cir. 2005) (citing 8 U.S.C. § 1325(c)). *See also* United States v. Chowdhury, 169 F.3d 402, 406 (6th Cir. 1999); United States v. Ortiz-Mendez, 634 F.3d 837, 839 (5th Cir. 2011); United States v. Darif, 446 F.3d 701, 710 (7th Cir. 2006); United States v. Yang, 603 F.3d 1024, 1025 (8th Cir. 2010). *Cf.* United States v. Rojas, 718 F.3d 1317, 1320 n. 2 (11th Cir. 2013) (adopting the first two elements, but noting that "[w]e have not addressed whether the government must also prove an additional

element, required by some circuits, that the defendant entered the marriage with knowledge that the conduct was unlawful.").

However, none of the above circuit courts have ever interpreted what the meaning of "the purpose" in terms of section 1325(c). On its face, "the purpose" as contained in the second element could stand for either of the following: (1) an individual entered into a marriage for the *sole* purpose of evading the immigration laws; or (2) *a* purpose for entering into the marriage was to evade the immigration laws. Thus, the meaning of "the purpose" is crucial to whether or not an individual violates section 1325(c) because there is a substantial evidentiary difference between the government having to prove that the individual's sole reason for getting married was to defraud the immigration process, or whether it was only a reason, among many, for getting married.

Therefore, given the lack of authority on interpreting what the meaning of "the purpose" is, and given its crucial impact on what needs to be proven to sustain a conviction under section 1325(c), we must turn to statutory construction in order to discern the meaning of "the purpose."

## C. Governing Principles of Statutory Construction.

Again, the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117

S. Ct. 843, 846 (1997). *See also* <u>United States v. Fugit</u>, 703 F.3d 248, 254 (4th Cir. 2012). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." <u>Id.</u> (citing <u>Estate of Cowart v. Nicklos Drilling Co.</u>, 505 U.S. 469, 477, 112 S.Ct. 2589, 2594–2595 (1992)).

In undertaking statutory construction, "words that are not defined in the relevant statutory provisions are typically 'interpreted as taking their ordinary, contemporary, common meaning.'" <u>Johnson v. Zimmer</u>, 686 F.3d 224, 232 (4th Cir. 2012) (quoting <u>United States v. Lehman</u>, 225 F.3d 426, 428 (4th Cir.2000)). Moreover, "[t]his court has long consulted dictionaries of common usage in order to establish the plain meaning of disputed statutory language." <u>Fugit</u>, 703 F.3d at 254 (citing <u>Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen</u>, 152 F.3d 283, 289 (4th Cir.1998)).

Further, where a word or phrase " 'lends itself to more than one reasonable interpretation,' it is ambiguous." <u>Johnson</u>, 225 F.3d at 235 (citing <u>Newport News Shipbuilding & Dry Dock Co. v. Brown,</u> 376 F.3d 245, 248 (4th Cir. 2004)). In the event the statutory language is susceptible to two logical interpretations, a court's "obligation is to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and

the general purposes that Congress manifested." Id. (citing Newport News Shipbuilding & Dry Dock Co., 376 F.3d at 248).

### D. Interpreting the Meaning of "the purpose" Under 8 U.S.C. § 1325(c).

Again, 8 U.S.C. § 1325(c) prohibits an individual from "knowingly enter[ing] into a marriage for the purpose of evading any provision of the immigration laws . . . ." However, the phrase "the purpose," is not defined in the statute. *See* id. As a result, we next turn to discerning the meaning of "the purpose" by examining the common understanding of the term with the aid of dictionary definitions.

### i.  The Meaning of "The" and "Purpose."

Given that "purpose" is the predominant word in the governing phrase, we will begin with defining its meaning. According to the Merriam-Webster Dictionary, "purpose" is a noun and its primary definition is "something set up as an object or end to be attained : INTENTION." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1011 (11th ed. 2011). The Oxford-English Dictionary defines the noun "purpose" as "the reason for which something is done or created or for which something exists." OXFORD-ENGLISH DICTIONARY ONLINE.[1]

Given these definitions, we can presume that ordinary meaning of the word "purpose" is attributable to a specific object, end, or reason for doing something.

---

[1] Available at http://www.oxforddictionaries.com/us/definition/american_english/purpose (last accessed on Jan. 26, 2014).

"The" is "used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1294 (11th ed. 2011). "The" has also been characterized as the function word "for the definite article [which] parallels the usage rule for the indefinite articles *a* and *an*." GARNER'S MODERN AMERICAN USAGE 809 (Bryan A. Garner et al. eds., 2009) (emphasis in original). *See also* Dictionary.com[2] ("[T]he" is "used, especially before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article *a* or *an*.") (emphasis in original).

Given these definitions, "the" is used to indicate that the subsequent noun is specific and definite, as opposed to "a or an" with are more general and indefinite. Together, the definitions strongly suggest that Congress intended "the purpose" under 8 U.S.C. § 1325(c) to refer to a specific, definite, and singular intention, not one motivation among many.

### ii. Additional Definitions and Supporting Context.

As it was outlined above, 8 U.S.C. § 1325(c) is entitled "Marriage fraud." Marriage fraud has also been characterized by many courts as a "sham marriage." *See, e.g.,* United States v. Islam, 418 F.3d 1125, 1126 (10th Cir. 2005) ("The court concluded a rational juror could have found that Defendant entered into a sham marriage to evade the immigration laws."); United States v. Vickerage, 921 F.2d

---

[2] Available at http://dictionary.reference.com/browse/the?s=t (last accessed Jan. 26, 2014).

143, 144 (8th Cir. 1990) (defendant indicted for "enter[ing] into a sham marriage to circumvent and evade the immigration laws in violation of 8 U.S.C. § 1325[c] [.]"); Cho v. Gonzales, 404 F.3d 96, 104 (1st Cir. 2005); United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002).

The definition of a sham marriage "is a purported marriage in which all the formal requirements are met or seemingly met, but in which the parties go through the ceremony with no intent of living together as husband and wife." BLACK'S LAW DICTIONARY 1500 (9th ed. 2009). Black's Law Dictionary also points to the analogous phrases "green-card marriage," and "limited-purpose marriage." *See,* id. A green-card marriage is defined as:

> A sham marriage in which a U.S. citizen marries a foreign citizen for *the sole purpose* of allowing the foreign citizen to become a permanent U.S. resident. The Marriage Fraud Amendments were enacted to regulate marriages entered into for the purpose of circumventing U.S. immigration laws. 8 U.S.C. §§ 1154(h), 1255(e).

Id. at 1060 (emphasis added). A limited-purpose marriage is "a marriage in which the parties agreed to be married only for certain reasons." Id. at 1061.

Thus, according to Black's Law Dictionary, marriage fraud equates to a fraudulent marriage, a shame marriage, or a limited-purpose marriage. The unifying feature of the latter phrases is that a couple enters into the marriage with no intent of being husband and wife, the sole purpose or reason is to procure immigration benefits.

### iii. Cases Supporting the Proper Interpretation of "the purpose."

Although no circuit court has gone to the above lengths to discern the true meaning of "the purpose" under 8 U.S.C. § 1325(c), many circuit courts have strongly suggested that "the purpose" equates to an individual's only or sole purpose.

The Sixth Circuit in United States v. Chowdhury, 169 F.3d 402 (6th Cir. 1999), agreed with the three-element approach for the offense of marriage fraud. Id. at 406. The important aspect of the Sixth Circuit's opinion concerning the meaning of "the purpose" was on the Court's discussion surround the rejection of one of the defendant's proposed jury instruction. *See*, id. at 407. The proposed instruction read:

> At the time that Wali Chowdhury married Beverly Davis he intended to live with her as husband and wife. The defendant Wali Chowdhury did not marry Beverly Davis with the *intention and the sole purpose* of evading the United States Immigration Laws. He did not intend to violate the criminal immigration laws.

Id. at 407 (emphasis added).

The Sixth Circuit noted that "a district court is required to instruct the jury on the theory of defense, [but] it is not error to refuse to give 'instructions which merely represent a defendant's view of the facts of the case,' rather than a distinct legal theory." Id. (quoting United States v. Frost, 125 F.3d 346, 372 (6th Cir.1997)). The Court held that "the proposed instruction in this case was no more

than a recitation of Chowdhury's view of the facts," not a distinct legal theory. Id.

Additionally, the Court further elaborated that "the instructions . . . '*with the intention* and ... for the *sole* purpose of evading the United States immigration laws[]'" were unnecessary because "nothing in the statute requires the additional language proposed by the defendant." Id. (emphasis in original). "Moreover, adding 'with the intention' would simply be cumulative to language already contained in the charge, *i.e.*, 'for the purpose,' which tracks the language of the statute." Id.

Thus, the Sixth Circuit explicitly held that that the language "with the intention" and "for the sole purpose" was not a distinct legal theory; meaning, that the wording might be different, but the underlying law is the exact same as a plain meaning of the statute. Moreover, there was no need to insert "intention" or "sole" because such language would be cumulative or redundant because the statute already addresses those issues.

This view was corroborated by a subsequent, unpublished opinion from the Sixth Circuit in United States v. Miah, 182 F.3d 919 (6th Cir. 1999). The Miah Court addressed the following jury instruction regarding marriage fraud under section 1325(c):

> First, that Syed Ansar Miah entered into a marriage with Linda Yago; second, that Syed Ansar Miah knowingly entered into the marriage for the purpose of evading the U.S. immigration laws; and third, that Syed

Ansar Miah knew of or had reason to know of the U.S. immigration laws.

Id. at *2. According to the Miah Court, "[t]he instruction the court gave permitted the jury to determine whether the purpose of the marriage was to evade immigration laws or whether the marriage was a valid one primarily entered into for other reasons, even if one of the obvious benefits was gaining permanent residence status." Id. at *3.

This characterization of the jury instruction tends to suggest that an individual violates the law if "the purpose of the marriage was to evade immigration laws," but does not violate the law if "the marriage was a valid one primarily entered into for other reasons, even if one of the obvious benefits was gaining permanent residence status." *See,* id.

Furthermore, whether a marriage is valid or not, in part, is decided by whether a couple intends to establish a life with one another. As the Supreme Court observed, "[t]he common understanding of a marriage . . . is that the two parties have undertaken to establish a life together and assume certain duties and obligations." Lutwak v. United States, 344 U.S. 604, 611, 73 S. Ct. 481 (1953). And when a couple "enter[s] into a marriage *solely* for the purpose of facilitating [one party's] entry into this country, and with no intention by either party to enter into the marriage relationship as it is commonly understood, . . . they were never married at all." Id. at 613, 73 S. Ct. at 487. *See also* United States v. Yum, 776

F.2d 490, 494 (4th Cir. 1985) ("[I]f the jury finds no mutuality between the parties to a marriage to 'establish a life together,' there is no marriage.").

The notion that establishing a life together equates to an individual having bona-fide intentions for purposes of whether marriage fraud has been committed, and whether that intention was should be considered for purposes of section 1325(c), has been discussed by a few circuit courts.

The Tenth Circuit in United States v. Islam, 418 F.3d 1125 (10th Cir. 2005), also suggests that "the purpose" does not equate to "a purpose." Regarding the second of the three-elements, the defendant in Islam "argue[d] the exclusive inquiry under the second element should be whether the couple 'intended to establish a life together.'" Id. at 1128 n. 3. The Tenth Circuit disagreed, but stated that "[s]uch an inquiry, although not exclusive, may be relevant to the alien's 'intent' in entering into a marriage." Id. Moreover, "the jury may consider such evidence when determining whether a marriage was entered into *for the purpose of evading the immigration laws*." Id. (emphasis in original).

The Tenth Circuit, by allowing the jury to consider whether an individual's marriage was valid or not and what the individual's intent was, suggests that an individual who enters into a marriage, one reason (among many) being to obtain immigration benefits, does not violate section 1325(c). That conclusion is drawn from the fact that if the Tenth Circuit believed that section 1325(c) only required

that one of the individual's reasons was to obtain immigration benefits in order to be convicted of marriage fraud, then it would not matter whether the marriage was valid or what the predominant intent of the individual was.

Likewise, the Fifth Circuit also believes "that one's intent to establish a life with his spouse is [not] irrelevant. It is one factor, among many, that can be considered in determining whether a marriage was entered into for the purpose of evading the immigration laws." United States v. Ortiz-Mendez, 634 F.3d 837, 840 (5th Cir. 2011).

Conversely, the Seventh Circuit believes that an individual's intent to establish a life with his spouse is irrelevant because "he still could have entered into the marriage for purposes of evading the immigration laws[.]" United States v. Darif, 446 F.3d 701, 710 (7th Cir. 2006). Thus, per the Seventh Circuit, the validity or a marriage or an individual's good-faith intentions in entering into a marriage is irrelevant if one reason for the marriage was to evade immigration laws.

Given the foregoing, the phrase "the purpose" is commonly meant to denote a specific aim or intention. The use of definitive words strongly suggests that Congress intended section 1325(c) to prohibit individuals from entering into marriages for no other reason than to evade immigration laws. Moreover, that conclusion is corroborated by our common understanding of what is a fraudulent marriage, a sham marriage, a green-card marriage, or a limited-purpose marriage.

42

Although no circuit court has specifically gone through such an analysis of what the phrase "the purpose" means, many circuits have suggested that if one reason an individual marries is to evade immigration laws, such proof is insufficient to sustain a conviction under section 1325(c). Furthermore, those courts, by allowing juries to consider the bona-fide intentions and the overall validity of an individual's marriage substantiates the conclusion that section 1325(c) prohibits individuals from entering into a marriage where the sole purpose is to evade immigration laws.

However, some may argue against the foregoing analysis by stating that if Congress had meant "the sole purpose" it would have used the word "sole." The fact that Congress did not use that word "sole" evidences an intent that "the purpose" does not mean "the sole purpose." But that rationale is misguided. If Congress did intend for "the purpose" to translate literally to "the sole purpose," the reason why it did not include "sole" was because it would be redundant given the common and ordinary meaning of "the purpose." Thus, because "the purpose" denotes a specific act or aim in its ordinary understanding, adding "sole" would be superfluous.

Nevertheless, interpreting "the purpose" as meaning either "the sole purpose" or "a purpose" are both logical to an extent. Moreover, as outlined above, circuit courts have seemed to legitimize both interpretations. Thus, if this Court

sees this split in authority as evidencing the ambiguity of the phrase "the purpose," and both interpretations are reasonable, then the Rule of Lenity must favor Appellant's definition that "the purpose" means "the sole purpose."

The Rule of Lenity "applies primarily to the interpretation of criminal statutes." Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1336, 179 L. Ed. 2d 379 (2011). However, the Supreme Court has agreed that "if a statute has criminal applications, 'the rule of lenity applies' . . . even in immigration cases . . . ." Clark v. Martinez, 543 U.S. 371, 380, 125 S. Ct. 716, 724 (2005) (quoting Leocal v. Ashcroft, 543 U.S. 1, 12, 125 S. Ct. 377, 384 (2004)).

The Rule presses upon courts "to favor a more lenient interpretation of a criminal statute 'when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" Kasten, 131 S. Ct. at 1336, 179 L. Ed.2d 379 (quoting United States v. Shabani, 513 U.S. 10, 17, 115 S.Ct. 382 (1994)). "Indeed, in the face of any such ambiguity, we would be *obliged* to apply the rule of lenity and resolve the conflict in the defendant's favor. United States v. Munn, 595 F.3d 183, 194 (4th Cir. 2010) (citing United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 2025 (2008)).

Here, the District Court committed reversible error by failing to charge the jury appropriately. Appellant's proposed jury instructions Nos. 35 and 37 held that the government had to prove that Appellant entered into a marriage with his spouse

only for the purpose of evading the immigration laws. [JA 54, 56]. Not only was each instruction denied in its entirety, but the District Court's final jury instructions failed to provide any acceptable explanation of what "the purpose' meant for convicting Appellant of marriage fraud. [JA 143 - 145]

As the above authority shows, there is overwhelming support for the proposition that "the purpose" was meant by Congress to mean "the sole purpose." And, at a minimum, if "the purpose" is ambiguous and susceptible to more than one reasonable interpretation , Appellant's interpretation must be favored. Thus, Appellants proposed instruction was a correct statement of the controlling law. Moreover, the District Court's final jury instructions, as a whole, did not adequately cover this issue. Therefore, the instructions did not accurately or fairly state the controlling law.

Accordingly, because the District Court failed to properly instruct the jury on the controlling law, Appellant respectfully requests that his conviction be reversed.

## **CONCLUSION**

THEREFORE, based on the foregoing, Appellant respectfully requests that this Court reverse his conviction and remand this case back to the United States District Court for the District of Maryland for a New Trial.

Respectfully submitted,

THE HMA LAW FIRM, PLLC

/s/

_____

Hassan M. Ahmad, Esq., #16049
1039 Sterling Road, Suite 204
Herndon VA 20170
Tel: (703) 964-0245
Fax: (703) 997-8556
hma@hmalegal.com
Attorney for Appellant Fatih Sonmez

46

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The Appellant respectfully requests that oral argument is necessary in this case because this appeal raises issues.

/s/ Hassan M. Ahmad, Esq

_____

Hassan M. Ahmad, Esq.

# CERTIFICATE OF COMPLIANCE

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for appellant certifies that the accompanying brief is printed in 14 point typeface, Times New Roman, and, including footnotes, contains no more than 14,000 words. According to the word-processing system used to prepare the brief, OpenOffice Writer, it contains **10,376** words.

/s/ Hassan M. Ahmad, Esq

_____

Hassan M. Ahmad, Esq.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

FATIH SONMEZ,

*Defendant-Appellant.*

_____

**CERTIFICATE OF SERVICE**

I hereby certify that on Januay 30, 2014, I electronically filed the foregoing Appellants' Brief and accompanying Appendix, if any, in this case with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

P. Michael Cunningham
Office of the United States Attorney
36 S Charles St 4th Fl
Baltimore, MD 21201
Tel: (410) 209-4884
Fax: (410) 962-3091
michael.cunningham@usdoj.gov
Assistant United States Attorney

THE HMA LAW FIRM, PLLC
/s/
_____
Hassan M. Ahmad, Esq., #16049
1039 Sterling Road, Suite 204
Herndon VA 20170
Tel: (703) 964-0245
Fax: (703) 997-8556
hma@hmalegal.com
Attorney for Appellant Fatih Sonmez

49